```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

MICHELLE PATRICE VINSON,

                              Plaintiff,         **No. 6:15-cv-06006(MAT)**
                                                                **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.
_____

## I.   Introduction

Michelle Patrice Vinson ("Plaintiff"), represented by counsel, brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.  Procedural Status

On May 16, 2011, Plaintiff protectively filed an application for DIB alleging disability since May 13, 2010, due to a neck injury and lower back injury. After the application was denied on November 18, 2011, Plaintiff requested a hearing, which was held before administrative law judge Michael W. Devlin ("the ALJ") on February 26, 2013. Plaintiff was represented at the hearing by an attorney. Impartial vocational expert Peter Manzi testified at the hearing, as did Plaintiff. The ALJ issued an unfavorable decision

on May 28, 2013. T.24-36.[1] The Appeals Council denied her request for review on November 7, 2014, making the ALJ's decision the Commissioner's final decision. This timely action followed, in which Plaintiff is represented by a new attorney.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed factual recitations contained in the parties' briefs. The Court will discuss the record evidence in further detail below, as necessary to the resolution of the parties' contentions. For the reasons discussed below, the Court reverses the Commissioner's decision and remands the matter for calculation and payment of benefits.

**III. The ALJ's Decision**

The ALJ applied the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520(a).

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2017, and has not engaged in substantial gainful activity since May 13, 2010, the alleged onset date. T.26. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative changes of the

---

[1] Numerals preceded by "T." refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

cervical spine with spinal canal stenosis and cervical myelopathy; status post cervical fusion/laminectomy associated with chronic neck pain, with more right-shoulder than left-shoulder pain; multi-level degenerative changes of the thoracic spine; chronic low back pain with radiculopathy and neuropathic symptoms and signs of the right leg; migraine headaches; and obesity. T.26. The ALJ found that claimant has the following non-severe impairments: history of sickle cell trait and recurrent iron deficiency anemia; remote history of gastric bypass surgery; mild reactive gastropathy/gastroesophageal reflux disease; and depression/anxiety. T.27. The ALJ also found that Plaintiff has diabetes; hypertension; hypothyroidism; and gastroesophageal reflux disease, but that they have "been well maintained, resolved and/or have required no more than conservative treatment measures." T.27.

Because the ALJ determined at step three that Plaintiff did not meet or equal any listed impairment, he proceeded assess Plaintiff's residual functional capacity ("RFC"). According to the ALJ, Plaintiff can perform

> less than a full range of sedentary work, specifically: occasionally lift and/or carry less than 10 pounds; frequently lift and/or carry no appreciable weight; stand and/or walk at less than two hours in an eight hour workday; sit about eight hours in an eight hour workday; he allowed to sit for 1-2 minutes after standing for 15 minutes and he allowed to stand 1-2 minutes after sitting for 30 minutes; occasionally push and/or pull less than 10 pounds; rarely climb ramps and/or stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders/ropes/scaffolds; never reach overhead with either upper extremity; and frequently reach, handle, and finger

    with both upper extremities occasional reach (all other directions), handle, and finger with both upper extremities.

T.28.

    The ALJ found that Plaintiff had past relevant work as a psychiatric aide (DOT# 355.377-014), a semi-skilled (svp 4), medium exertional job that she actually performed at the heavy exertional level. T.35.[2] The demands of that work exceed her current RFC, however. Id. As of the onset date of May 13, 2010, Plaintiff was 46 years-old, making her a "younger individual" (age 45-49) under the Regulations; and she had at least a high school education and could communicate in English. Considering her age, education, work experience, and RFC, the ALJ found, based on the vocational expert's testimony, that Plaintiff could perform the requirements of representative occupations such as table worker (DOT #739.687-182, unskilled (svp 2), sedentary) and addresser (DOT #209.587-010, unskilled (svp 2), sedentary), both of which exist in significant numbers in the national and regional economies. Therefore, the ALJ entered a finding of "not disabled."

---

[2] When Plaintiff ceased working due to her disability in May 2010, she was employed part-time by the Rochester Psychiatric Center ("RPC") as a pharmaceutical technician working in the lab. T.44. Prior to that she worked full-time at RPC as a senior security hospital treatment assistant, dealing with the criminally insane. T.45. In March 2009, she sustained a fall at work and re-injured her back, knee, and buttocks, which is why she was transferred to the job in the lab. T.47. Plaintiff also had worked at Berkshire Farm, State-run facility for young adults, as one of the first-line of security staff. T.46-47. In total, she had 27 years and 9 months of employment with the State. T.46.

**IV.  Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). "Failure to apply the correct legal standards is grounds for reversal." Townley, 748 F.2d at 112.

**V.  Discussion**

　**A.　The ALJ's RFC Is Not Supported by Substantial Evidence**.

Plaintiff argues that in formulating the limitations in the RFC assessment, the ALJ did not rely on actual medical evidence or opinion but instead substituted his own lay opinion.

Social Security Ruling ("SSR") 83-10 defines RFC as follows: "A medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental

restrictions imposed by all of his or her medically determinable impairment(s). . . ." SSR 83-10, 1983 WL 31251, at *7 (S.S.A. 1983). "As explicitly stated in the regulations, RFC is a medical assessment; therefore, the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision." Gray v. Chater, 903 F. Supp. 293, 301 (N.D.N.Y. 1995) (citing 20 C.F.R. § 404.1513(c), (d)(3)); other citation omitted).   Plaintiff contends that the sitting and standing limitations created by the ALJ, requiring Plaintiff to sit for 1-2 minutes after standing 15 minutes, and stand 1-2 minutes after sitting 30 minutes, T.28, are not supported by any particular medical opinion and are based solely on the ALJ's intuition or conjecture. Therefore, Plaintiff argues, remand is warranted. See Dkt #9, p. 2 (citing Cosnyka v. Colvin, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order)). In Cosnyka, the ALJ found that the claimant would be off task approximately ten percent of the workday, which the ALJ there defined as six minutes out of each hour. Relying upon the testimony of the vocational expert that being off-task six minutes out of every hour would not prevent Cosnyka from holding a job, the ALJ concluded that he was not disabled under the Act. The Second Circuit found that the ALJ's RFC finding and consequent interpretation of the vocational expert's testimony was unsupported, see Cosnyka, 576 F. App'x at 46, explaining that the ALJ's determination that this "off-task" time

translated to six minutes out of every hour "was not based on the record but was the result of the ALJ's own surmise." Id. The Second Circuit observed that an orthopedic examiner had reported Cosnyka would require "regular comfort breaks," but did not indicate the length of those breaks; and that Cosnyka testified that he can sit for "[m]aybe up to three" hours if he can shift around in his seat, and that he would need more frequent breaks after that. However, there was "no evidence in the record to the effect that Cosnyka would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday." Id. Indeed, the Second Circuit noted the existence of evidence in the record to the contrary: Cosnyka testified that he would need a 15–20 minute break to walk off his pain caused by sitting. Id. Accordingly, the Second Circuit found "no basis for the ALJ to incorporate this 'six minutes per hour' formulation into the RFC finding." Id. Moreover, the Second Circuit noted, the vocational expert's opinion that there were jobs that Cosnyka could perform was based upon hypothetical questions involving the ALJ's six-minutes per hour formulation. Given that the ALJ's six-minutes per hour limitation in the RFC was unsupported by substantial evidence, the vocational expert's testimony based on that limitation necessarily was flawed.

Here, treating source Dr. Andrew Wolff, whose opinion the ALJ accorded "great" weight, completed a Medical Source Statement of

Ability to Do Work-Related Activities (Physical) ("MSS") on January 18, 2013. See T.345-48. One question on the MSS asked "how many hours total (with normal breaks) can the individual sit," and the options given on the form were as follows: "less than about 6 hours in an 8-hour workday;" "about 6 hours in an 8-hour workday;" or "must periodically alternate sitting and standing to relive pain or discomfort (if checked, explain in item 5)." T.346. Dr. Wolff checked off the third option (periodically alternate sitting and standing). In item 5, the form asked what medical findings supported Dr. Wolff's conclusions; Dr. Wolff wrote, "arm weakness due to cervical myelopathy," and "leg pain and weakness due to lumbosacral radiculopathy." T.346. Dr. Wolff also stated that Plaintiff could only stand and/or walk less than two hours in an eight-hour workday. T.345. This limitation is inconsistent with sedentary work which "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing SSR 83-10; 20 C.F.R. § 404.1567(a)). Similarly, consultative examiner Dr. Karl Eurenius, to whose opinion the ALJ assigned "significant" weight, did not provide any specifics as to the duration of time Plaintiff could sit, stand, and walk; he simply opined that Plaintiff was "limited" with regard to "prolonged" sitting and "prolonged" standing, but did not provide any specific time guidelines or limitations. See T.291-94. However, "[b]y its very

nature 'sedentary' work requires a person to sit for long periods of time. . . ." Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983).

Furthermore, Plaintiff testified that she experienced constant pain in her lower back and in both sides of her buttocks, radiating from her right buttock down the entire leg into the foot; it was an "aching, pounding pain." T.48. Asked what made the pain worse, Plaintiff responded "[p]rolonged sitting, prolonged standing" and anytime she has to stay in a certain position. T.49. She testified that she was "[p]robably" able to stand for 10 minutes without a problem and walk for 10 minutes without a problem, but when asked if she could sit without a problem, she replied negatively. Plaintiff explained that the pain in her back will start "tightening up" her muscles so she will "go out of the chair and back in, because [she] [has] to just keep maneuvering [her]self, to try to be comfortable." T.52. Even prior to the administrative hearing, after her injury at work, when she was trying to return to work in a lesser capacity in 2012, the restrictions imposed by her medical providers no longer than 15 minutes of sitting and no longer than 15 minutes of standing, as well as no stairs or no climbing. T.61. Therefore, the ALJ's "sit for 1-2 minutes after standing 15 minutes, and stand 1-2 minutes after sitting 30 minutes" formulation is unsupported by substantial evidence in the record, be it medical opinion or testimonial evidence. Moreover, as

in Cosnyka, the vocational expert's opinion that there were jobs that Plaintiff could perform was based upon hypothetical questions involving the ALJ's "sit for 1-2 minutes after standing 15 minutes, and stand 1-2 minutes after sitting 30 minutes" formulation. See T.67-68 (testifying that if an individual was unable to sit, stand and walk, in combination, for at least eight hours in an eight-hour day, there would not be any jobs). The ALJ's finding that Plaintiff is not disabled is based on an RFC that is not based on substantial evidence and is based solely on his own surmise. Had the ALJ included the sitting and standing limitations which were supported by substantial evidence in the record, there would be no jobs that Plaintiff could perform, based on the VE's testimony.

**B.    The ALJ Erred in Refusing to Find Plaintiff's Depression to Be a Severe Impairment.**

Plaintiff argues that the ALJ improperly discounted Plaintiff's depression as a non-severe impairment at step two and did not obtain a consultative psychological examiner's opinion or request a mental residual functional capacity assessment by a treating source. Plaintiff asserts that there is substantial evidence in the record demonstrating that she was being treated consistently by her doctors for depression.

In this Circuit, the step two "severity inquiry" serves only to "screen out de minimis claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). When mental impairments are at issue, the severity determination (i.e., whether there is an abnormality

-10-

having more than minimal effect on the claimant's ability to work) is made by applying the "special technique" set out in 20 C.F.R. § 404.1520a(b)-(e); see also Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir. 2008) (describing "special technique"). The special technique requires an ALJ to "rate the degree of functional limitation" in four areas: (1) "[a]ctivities of daily living;" (2) "social functioning;" (3) "concentration, persistence, or pace;" and (4) "episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). Here, the ALJ's application of the "special technique" consists of the following sentence: "According to the evidence of record, [he] finds the claimant has mild limitations in activities of daily living, social functioning, and in concentration, persistence, pace, and no episodes of decompensation." T.27. Therefore, the ALJ found her medically determinable mental impairment to be non-severe. T.27 (citing 20 C.F.R. § 404.1520a(d)(1)). However, although the ALJ appears to have evaluated the four functional areas, he failed to record specific findings to support the degree of limitation assigned to any of the functional areas or to cite to any particular record evidence in support of his application of the special technique. This Court's ability to provide meaningful appellate review accordingly is frustrated. See Kohler, 546 F.3d at 269 ("We can neither identify findings regarding the degree of Kohler's limitations in each of the four functional areas [at step two] nor

discern whether the ALJ properly considered all evidence relevant to those areas. We therefore cannot determine whether the ALJ's decision regarding Kohler's claim is supported by substantial evidence and reflects application of the correct legal standards.").

Moreover, the ALJ's step two finding is unsupported by substantial evidence in light of the long-standing treatment Plaintiff has received for her depression. Although the date of her initial diagnosis is unclear, a treatment record from Dr. Glenn Rechtine in August 2009, indicates she already had been prescribed Cymbalta for depression. T.282. Plaintiff's depressive symptoms were treated throughout the relevant time by both Dr. Rechtine and Dr. Wolff. See T.278, 273-274; 330; 331; 327-329; 325-326; 319; 315; 317; 309; 310; 313. Dr. Wolff's notes indicate that Plaintiff visited a psychiatrist at one point, but her Worker's Compensation insurance would not cover the cost, so she stopped going. T.309. Dr. Wolff stated on a multiple occasions that Plaintiff's depression was severe and "worsening" despite a "high" dosage of her anti-depressant, and that he wanted her to see a psychiatrist for medication management, as well as a therapist for counseling. See T.310, 317, 318, 329, 331.

The Commissioner argues that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's depression is non-severe. The Commissioner cites one treatment note

by Dr. Wolff indicating that Plaintiff's depression was "improving," T.328, but ignores the treatment notes cited above that indicate that Plaintiff felt medications were not helping and that her symptoms seemed worse. Further, the Commissioner's statement that Plaintiff's depressive symptoms were controlled by Cymbalta is not supported by the record. Plaintiff was taking both Cymbalta and amitryptiline (Elavil), see T.327, but she "denie[d] any improvement in her anxiety or depression, she wonders if she needs a different anti[-]depressant. She does feel somewhat more depressed." T.330.

The Commissioner also argues that Plaintiff only alleged disability based on physical impairments and, in any event, cannot possibly have more than mild restrictions caused by her mental impairments, since she stated, in a function report submitted at the beginning of the disability application process, that she did not need reminders to take her medicine, had no problems paying attention, and could follow instructions. See T.167, 170-71. The Commissioner's argument depends on an assumption that Plaintiff mental condition has been static, which is contrary to the record in this case. Moreover, the Commissioner is impermissibly attempting to supply post hoc rationalizations for the ALJ's flawed decision-making. See, e.g., Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court 'may not accept appellate

counsel's post hoc rationalizations for agency action.'") (quotation omitted).

In addition, the Commissioner's arguments depend on a selective parsing of the record. "It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination." Nix v. Astrue, No. 07-CV-344, 2009 WL 3429616, at *7 (W.D.N.Y. Oct. 22, 2009) (citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004)). The November 2011 report cited by the Commissioner actually states that Plaintiff answered affirmatively when asked if she has trouble remembering things. See T.171 (stating that she "will forget unimportant things" and that she "think[s] sometimes [her] medicine makes [her] forget"). About two years later, at the hearing in February 2013, Plaintiff testified as to increased impairment in her memory. See T.51 (stating that she "used to remember things very well" but now "it's not good"). For instance, Plaintiff could not remember the name of a medicine she took twice a day, and she had to "write down everything" or else she would forget. T.51. She also testified that her concentration and focus "not good." Id. Plaintiff testified that she goes into rooms and forgets why she had done so; she used to be able to keep a lot of information in her head for her job at the RPC and described her memory as formerly being "very sharp" but "now it's not good." T.51. At the time of the hearing, Plaintiff testified, "I take

morphine, Lyrica, Cymbalta, Ambien, amitriptyline, calcium. That's all I can remember." T.50. Her records indicate she also was taking Butalbital-Acetaminophen-Caffeine, Lansoprazole, and Nystatin (topical). T.330. However, the ALJ failed to include in his RFC the side-effects of these medications to which Plaintiff testified, chiefly, her drowsiness and tiredness, lack of ability to pay attention and concentration, difficulty remembering and increased forgetfulness.[3] The ALJ recognized that Plaintiff testified as to symptoms that would affect her productivity at work, given that one of his hypotheticals to the VE posited an individual who was off-task due to "medications and drowsiness" 15 to 20 percent of the time. The VE testified that such a restriction would rule out all of the jobs to which he previously testified. T.70. The VE testified that although a 5 percent level

---

[3] Side effects of morphine include dizziness, drowsiness, nausea, vomiting stomach pain and cramps, sweating, dry mouth, weakness, headache, agitation, nervousness and confusion. See https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682133.html#side-effects. Side effects of Ambien include drowsiness, tiredness, headache, dizziness, lightheadedness, "drugged feeling", unsteady walking, difficulty keeping balance, nausea, constipation, and dry mouth. See https://www.nlm.nih.gov/medlineplus/druginfo/meds/a693025.html#side-effects. Side effects of Lyrica include tiredness, dizziness, headache, dry mouth, constipation, speech problems, difficulty concentrating or paying attention, confusion, difficulty remembering or forgetfulness, anxiety, lack of coordination, and loss of balance or unsteadiness. See https://www.nlm.nih.gov/medlineplus/druginfo/meds/a605045.html#side-effects. Side effects of amitriptyline include drowsiness, weakness or tiredness, nightmares, headaches, dry mouth, constipation, changes in appetite or weight, confusion, and unsteadiness. See https://www.nlm.nih.gov/medlineplus/druginfo/meds/a682388.html#side-effects. Butalbital-Acetaminophen-Caffeine (Fioricet) can cause fast, pounding, or uneven heartbeat; feeling light-headed or short of breath; drowsiness; dizziness, confusion or lightheadedness; dry mouth; drunk feeling; or headache. See http://www.rxlist.com/fioricet-drug/patient-images-side-effects.htm#sideeffects.

of being off-task possibly could be tolerated in the call out operator job "in the beginning", even 5 percent "might be problematic" "if it persisted[.]" T.71. The ALJ's RFC did not take into account any of the significant non-exertional limitations caused by Plaintiff's physical and mental impairments and the medications she required to attempt to manage these impairments. Had the ALJ included in his RFC these non-exertional limitations that were supported by substantial evidence, the VE's testimony establishes that substantial gainful employment would be precluded.

**V.   Remedy**

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. The Second Circuit "has recognized delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability." McClain v. Barnhart, 299 F. Supp.2d 309, 310 (S.D.N.Y. 2004) (citations omitted). The standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004). That standard is easily met here, as discussed above. Reversal for calculation of benefits is

particularly appropriate because Plaintiff's benefits claim has been pending for over seven years, and additional administrative proceedings would only lead to further delay.

**VI. Conclusion**

For the foregoing reasons, the Court finds that the Commissioner's determination was erroneous as a matter of law and was not supported by substantial evidence. Accordingly, Defendant's Motion for Judgment on the Pleadings (Dkt #8) is denied, and Plaintiff's Motion for Judgment on the Pleadings (Dkt #7) is granted. The Commissioner's decision is reversed, and the matter is remanded solely for calculation and payment of benefits.

    **SO ORDERED.**

                                          **S/Michael A. Telesca**

                              HONORABLE MICHAEL A. TELESCA
                              United States District Judge

Dated:    December 9, 2015
           Rochester, New York